RIVERA, DEMANDANTE Y APELANTE, *v.* RIBAS ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Ponce en pleito sobre indemnización de daños y perjuicios.

No. 2459.—Resuelto en enero 15, 1923.

DAÑOS Y PERJUICIOS—TRABAJO—NIÑOS—OCUPACIONES PELIGROSAS PARA LOS NIÑOS.—Ocupar un niño menor de catorce años en alimentar con rabos de caña los bueyes y en recoger las cañas que caen de los carros mientras los bueyes caminan, dentro del negocio general lucrativo de corte, conducción y molienda de cañas dulces, es emplearlo en una ocupación esencialmente peligrosa.

ID.—ID.—NEGLIGENCIA *per se.*—Un patrono que en contravención de la ley emplea un niño menor de catorce años en una ocupación lucrativa, peligrosa para el niño, es culpable de negligencia *per se* y responde de los perjuicios que el niño sufra en el curso del empleo.

ID.—ID.—DAÑOS RECIBIDOS EN EL CURSO DEL EMPLEO.—Habiéndose demostrado

que el niño menor de catorce años en este caso, si bien en el instante mismo en que ocurrió el accidente no daba de comer rabos de caña a los bueyes o recogía las cañas que caían de los carros al camino, es lo cierto que realizando esta última ocupación se le ordenó por el carretero, empleado de los demandados y a cuyas órdenes trabajaba, que hiciera cierta diligencia para practicar la cual pasó por el lado de los bueyes de los demandados que se desviaron y le hicieron caer pasándole entonces por encima el carro de los demandados, fracturándole una pierna e hiriéndole gravemente otra, siendo bueyes, carro, cañas y carretero parte del negocio lucrativo de los demandados, en el cual emplearon al niño en violación de la ley; debe concluirse que el accidente sufrido por el niño lo fué en el curso de su empleo.

ID.—ID.—CUANTÍA DE LA INDEMNIZACIÓN.—En el presente caso el niño contaba a la fecha del accidente once años de edad, era saludable y apto para el trabajo. No sabía leer ni escribir. Sufrió varias heridas que le causaron dolor intensísimo y como consecuencia de una de ellas la fractura de una pierna. Estuvo cuatro meses en el hospital. Reconocido dos años después, a la fecha del juicio, andaba cojo a consecuencia de la fractura y si bien podía trabajar, usando las palabras del perito médico, lo sería ''según la clase de trabajo, si es un trabajo suave, que él no tenga que andar, podrá hacerlo, pero si es un trabajo que requiera actividad, ejercicios violentos, siempre tendría el defecto éste que le impediría hacer lo que otro hombre pudiera hacer en iguales condiciones.'' *Se resolvió:* que bajo las anteriores y todas las circunstancias de este caso, debía fijarse la indemnización en cinco mil y un dólares.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. L. Tormes.*

Abogados de los apelados: *Sres. J. y M. Tous Soto.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Herminia Rivera como madre natural con patria potestad del menor Manuel Rivera entabló una demanda en la Corte de Distrito de Ponce contra José Ribas y Angel Torres en reclamación de diez mil dólares por daños y perjuicios, para el menor indicado. Contestaron los demandados. Fué el pleito a juicio y la corte finalmente dictó sentencia declarando la demanda sin lugar. La parte demandante interpuso entonces el presente recurso de apelación.

Forma parte de los autos una ''relación del caso y opinión'' que creemos conveniente trascribir íntegra para el mejor estudio y decisión de todas las cuestiones envueltas. Héla aquí:

"La vista de este caso se celebró el día 16 de marzo de 1921, previo señalamiento en el calendario con asistencia de ambas partes por sus respectivos abogados.

"De la evidencia aportada por ambas partes, que es contradictoria en extremos esenciales, la corte, examinándola y aquilatándola en su conjunto, estima que se ha probado:

"Que Herminia Rivera, la demandante, es madre con patria potestad del niño Manuel Rivera, que cuenta 13 años de edad.

"Que los demandados eran socios en la fecha del accidente en una empresa agrícola, de cultivo de cañas dulces dentro de la jurisdicción de esta corte.

"Que en 24 de enero de 1918, el menor Manuel Rivera estaba trabajando al servicio de los demandados en el oficio de dar 'rabo' u hoja de caña a los bueyes de los demandados mientras dichos animales estaban uncidos a los carros destinados a trasportar las cañas cortadas y era, además, deber del niño recoger las cañas que se cayeran de los carros durante el acarreo. Por este trabajo recibía Manuel Rivera veinte centavos diarios y trabajaba más de siete horas diarias.

"Que dicho menor fué empleado sin habérsele exigido el certificado requerido por la ley regulando el trabajo de mujeres y niños y protegiéndolos contra ocupaciones peligrosas, no siendo su madre inválida ni dependiendo del menor para su subsistencia.

"Que el día 24 de enero de 1918, mientras iban los carros de los demandados conduciendo cañas y el menor detrás del último para recoger las cañas que se cayeran, fué enviado por el carretero Anastacio Alvarado, a hacer una diligencia, no recordando cuál fuera y al pasar por la orilla del camino, cerca del carro de dicho Alvarado, los bueyes se desviaron rápidos hacia él, le hicieron caer al suelo y el carro le pasó por encima, fracturándole la pierna derecha e hiriéndole gravemente la izquierda a consecuencia de lo cual hubo de ser recluído en un hospital, por cuatro meses, ha sufrido intensos dolores físicos y angustia mental y ha quedado permanentemente inútil para todo trabajo que requiera el empleo de las piernas.

"La madre declaró que estimaba los daños y perjuicios sufridos en diez mil dollars.

"La primera cuestión de derecho a determinar, habiendo establecido la relación de empleado y patrono entre el menor y los demandados, es si el accidente en la forma que ocurrió tuvo lugar en el curso del empleo, es decir, mientras el menor hacía diligencias legítimas dentro de la esfera de su ocupación.

"Ya hemos visto que su oficio era el de alimentar a los bueyes con 'rabo' de cañas en los momentos en que éstos estuviesen parados, uncidos al yugo, y durante el acarreo, recoger las cañas que se cayeran al camino. No ocurrió el accidente según la propia declaración del menor mientras él llevaba a cabo alguno de sus menesteres. Ocurrió al hacer una diligencia, a requerimiento de un carretero, de la cual él no se acuerda. No se ha probado por consiguiente, que el menor sufriera el accidente dentro del curso de su empleo, condición indispensable para que el patrono sea responsable.

"La segunda cuestión es la de la negligencia del patrono o empleado suyo, actuando dentro de sus atribuciones, como causa próxima y eficiente del accidente.

"Un desvío rápido de los bueyes hacia el menor, fué la causa próxima del accidente. No se ha probado acto negligente ninguno de parte de los demandados o de alguno de sus empleados, actuando dentro de sus legítimas funciones, que provocara u ocasionara ese movimiento de los bueyes y fuera causa del accidente.

"Pero el abogado de la demandante alega que el hecho de haberse empleado al menor en violación del estatuto que lo prohibe, constituye negligencia *per se,* bastante a hacer a los demandados responsables del accidente y de los daños y perjuicios ocasionados. Existe un conflicto de autoridades sobre esta materia. Véase 18 R. C. L. 552.

"Hay casos que llegan a sostener que existe una buena causa de acción aun cuando el accidente ocurriera mientras el niño empleado estuviera haciendo algo fuera de la esfera de los deberes de su empleo, considerando la mera violación del estatuto como causa próxima del accidente. *Starmes* vs. *Albion Mfg. Co.,* 17 L. R. A. (NS) 602. Pero creemos que el peso de las autoridades se manifiesta en el sentido de que para poder reclamar daños y perjuicios es necesario que el niño haya sido empleado en ocupaciones de por sí peligrosas y entonces la mera violación del estatuto, se tendrá como negligencia *per se* y causa próxima del accidente. Si la ocupación no es de ese carácter, la violación del estatuto habrá de estimarse como un elemento de negligencia a considerar con los demás actos de negligencia que se haya demostrado y que sean la causa eficiente del accidente. Además, el accidente debe haber ocurrido durante el curso del empleo y mientras el menor actuaba dentro de la esfera legítima de sus atribuciones.

"No habiendo probado la demandante en este caso que el acci-

dente ocurriera dentro del curso del empleo; ni que la ocupación
dada al menor fuera esencialmente peligrosa para él, ni que los de-
mandados o alguno de sus empleados actuando dentro de sus atri-
buciones, realizaron algún acto u omitiesen alguna precaución que
fuera causa del accidente, somos de opinión que la negligencia sur-
gente de la violación del estatuto no es bastante para considerarla
como causa próxima del accidente y debe desestimarse la demanda
sin especial condenación de costas."

Sostiene, pues, en resumen, el tribunal sentenciador, pri-
mero: que no se probó que el menor sufriera el accidente
dentro del curso de su empleo, condición indispensable para
que el patrono sea responsable; segundo, que no se probó
que la ocupación dada al menor fuera esencialmente peli-
grosa para él, motivo por el cual no podría considerarse como
negligencia *per se* el sólo acto del empleo del menor en contra
de la ley, y tercero, que no se probó que los demandados por
sí o por sus empleados, actuando éstos dentro de sus atribu-
ciones, realizaran acto alguno u omitiesen alguna precaución
que fuera causa del accidente.

Para formar una idea clara y justa de este caso, es nece-
sario comenzar por estudiar cuál es el efecto que tiene en el
mismo la Ley No. 42 "regulando el trabajo de mujeres y ni-
ños y protegiéndolos contra ocupaciones peligrosas," apro-
bada el 13 de marzo de 1913.

La sección 4 de dicha ley, que es aplicable, lee así:

"Sección 4.—Ningún niño menor de catorce años que no haya
recibido del Departamento de Instrucción un certificado de haber
realizado el trabajo necesario para ser admitido en el cuarto grado
de las escuelas públicas rurales o de haber aprobado el octavo grado
de las escuelas públicas graduadas de la Isla, según que el niño
resida en el campo o en la población, o que haya terminado los es-
tudios equivalentes a dichos grados del curso escolar, podrá ser em-
pleado en ninguna ocupación lucrativa durante las horas en que
dichas escuelas están abiertas; disponiéndose que este artículo no
comprenderá a ningún niño que resida en una localidad en que no
haya escuelas a una distancia razonable que puedan admitirlo, ni a
ningún niño huérfano, o que por otra causa tenga que depender de

su propio trabajo para sostenerse, ni a ningún niño cuyos padres sean inválidos, y sólo dependan del trabajo del hijo para vivir. Pero en tal caso, debe obtenerse una certificación del Alcalde del municipio en que dicho niño reside, exponiendo el hecho de que tal estado de cosas o necesidad existe, y autorizando el empleo de dicho niño. Copia de este permiso se enviará al Negociado del Trabajo dentro de los diez días siguientes a su expedición; disponiéndose, también, que si dicho niño vive a distancia de un kilómetro de una escuela nocturna dirigida por el Departamento de Instrucción de esta Isla, este certificado continuará en vigor sólo durante el tiempo en que la asistencia de dicho niño a la mencionada escuela nocturna sea certificada mensualmente por el maestro de la escuela, a no mediar causa justa que impida al niño concurrir a dicha escuela.

"Todo patrono que emplee niños a los cuales se exijan certificados de acuerdo con las disposiciones de esta Ley, conservará archivados estos certificados, sujetos a la inspección de los funcionarios del Departamento de Instrucción y a la de los investigadores del Departamento del Trabajo. A la terminación de dicho empleo, se devolverán los certificados al niño a cuyo nombre se hallan expedidos."

Ocupación lucrativa incluye, según el párrafo 3 de la misma ley: "toda obra o todo trabajo en factorías, molinos, centrales, talleres de maquinarias o establecimientos o sitios de cualquier clase donde haya una fábrica o empresa mecánica; en almacenes, tiendas, establecimientos o sitios de cualquiera clase donde se realicen operaciones mercantiles; en fincas, haciendas, estancias o sitios de cualquier clase, en los cuales se dirijan empresas agrícolas, de horticultura o pastoreo, y en toda empresa de minería o pesquería."

Por la sección 12 de la ley se fija una penalidad a todo patrono que infrinja cualquiera de sus disposiciones.

Siendo esto así, es necesario concluir que los demandados emplearon a Manuel Rivera, menor de catorce años, en una ocupación lucrativa en contra de la ley.

Podrían suscitarse dudas con respecto al alcance de la ley a que acabamos de referirnos en relación con la jurisprudencia que vamos seguidamente a analizar, en el sentido de que el

propósito de la Legislatura no fué proteger al niño contra ocupaciones peligrosas, sino garantizar su educación. Tales dudas serían, quizá, de importancia, si se hubiera empleado al menor en una ocupación meramente lucrativa y fuera de la ley No. 42 citada la única violada en este caso. Pero aquí el menor se empleó en una ocupación lucrativa peligrosa no sólo en violación de la ley No. 42 de 1913 si que también en violación de la sección 2 de la vigente Ley Orgánica de la Isla, que la misma parte apelada invoca como aplicable.

El párrafo final de dicha sección segunda, dice: "El empleo de niños menores de catorce años en cualquier ocupación perjudicial a la salud o a la moral o que ponga en riesgo la vida o cualquiera parte del cuerpo, queda por la presente prohibido." Y la ocupación de dar rabo de caña a los bueyes y recoger las cañas que se caen mientras los carros caminan, es esencialmente peligrosa. Si bien el buey es animal doméstico, para trabajar con él necesítase la fuerza y la experiencia del hombre. Un carro o carreta tirado por bueyes y cargado de cañas es un instrumento pesado y de difícil y arriesgado manejo. Cuando se emplea dentro de las fincas, cruza generalmente por caminos accidentados, en malas condiciones. Para recoger las cañas que se caen mientras el carro camina, no obstante lo despacio que lo haga, se necesita gran destreza y estar muy alerta, bajándose rápidamente, y correr. De la parte de atrás y ocupada la vista y la atención en recoger las cañas y lanzarlas sobre el carro, no se observan los accidentes del camino. Consideraciones son éstas y muchas otras que pudieran exponerse deduciéndolas de la naturaleza misma de las cosas, y de la experiencia de los hechos, que demuestran que ocupar a un niño menor de catorce años como en este caso en dar rabo de caña a los bueyes y recoger las cañas que caigan del carro mientras los bueyes caminan, lanzándolas nuevamente al carro, es emplearlo en una ocupación esencialmente peligrosa. Es lanzarlo a un rudo esfuerzo con riesgo de su vida, para obtener el patrono, a bajo precio, el trabajo

que corresponde a un hombre, o a un joven de músculos e inteligencia y experiencia debidamente desarrollados. El hecho de los repetidos casos de lesiones y muertes que ocurren, constantemente en Puerto Rico en relación con la conducción de carros y cuidado de bueyes, sostiene la conclusión a que hemos llegado.

Veamos ahora qué han resuelto los tribunales en casos semejantes. Rulling Case Law con su acostumbrada claridad, resume la jurisprudencia así:

"En época reciente se han promulgado en muchos si no en la mayoría de los Estados leyes prohibiendo el empleo de niños ya absolutamente o ya en ciertos negocios determinados. Y se ha preguntado. a menudo si tales promulgaciones tienen algún efecto y en caso afirmativo cuál, sobre la responsabilidad de un patrono hacia un menor que ha sido lesionado mientras trabajaba en violación de la ley. Después de alguna vacilación y duda ha venido a ser una regla en la mayoría de las cortes que una violación de un estatuto prohibiendo el empleo de niños e imponiendo una pena al patrono ha de considerarse prueba concluyente de negligencia siempre que pueda verse que tal violación ha sido la causa natural e inmediata de la lesión. En otras palabras, la violación del estatuto constituye negligencia como cuestión de derecho, o sea, negligencia *per se.* Algunas cortes, sin embargo, declaran que la violación del estatuto ha de ser considerada solamente como prueba *prima facie* de negligencia, o como un hecho tendente a probar la negligencia a ser considerado por el jurado en relación con las demás pruebas del caso: y no faltan casos en que se sostenga que el empleo de un niño menor de edad estatutoria no es prueba en manera alguna de negligencia por parte del patrono. \* \* \* Como quiera que esto sea, todas las cortes están conformes en que para hacer responsable al que emplea un un niño por lesiones sufridas por éste, tiene que haber habido una relación causal entre el empleo ilegal y la lesión motivo de queja. En las palabras de la ley de negligencia, debe demostrarse que el empleo ilegal fué la causa próxima de la lesión. El mero hecho de que el niño sea lesionado durante el tiempo de su empleo no da vida a un derecho de acción. Si, por ejemplo, el niño muere de alguna enfermedad orgánica, o es lesionado por un rayo u otra causa interventora fuera del dominio del patrono y que razonablemente no podía ser prevista e impedida, el patrono no será consi--

derado responsable.  Pero si la lesión fuere recibida mientras el
niño está activamente dedicado al cumplimiento de los deberes de
su empleo, el empleo ilegal se, considera ser generalmente la causa
próxima de la lesión.  El hecho de que la lesión fuera recibida
mientras el niño estaba haciendo una cosa prohibida o un acto fuera
del círculo de sus deberes no destruye la relación causal entre el
empleo y la lesión.  De conformidad, un niño menor de la edad
estatutoria empleado para barrer el salón de hilar y para hacer
fajas en una fábrica de algodón tiene derecho a recobrar daños por
lesiones sufridas mientras curioseaba con una maquinaria peligrosa
en otro piso de la fábrica.''  18 R. C. L. 552-554.

Véanse además las notas a los casos de *Rolin* v. *R. J.
Reynolds Tobacco Co.,* 141 N. C. 300, 53 S. E. 891, y *Elk
Cotton Wills* v. *Grant,* 140 Ga., 327, 79 S. E. 836, que aparecen
en los tomos 7 y 48 de L. R. A. (NS)..

Después de un estudio detenido de la cuestión, no sólo por
el número mayor de las decisiones, sino por la fuerza de sus
razonamientos, nos parece justo el criterio que sostiene que
el empleo de niños en contravención de la ley, constituye ne-
gligencia *per se.*  Tales leyes se promulgan para proteger la
infancia, teniendo en cuenta que el desarrollo de la persona-
lidad humana es gradual, y cuando un patrono no obstante
la advertencia, no ya la advertencia, el mandato del legisla-
dor, usa las fuerzas de un niño en una ocupación lucrativa,
peligrosa, debe ser responsable de todos los perjuicios que al
niño se ocasionen por razón de tal empleo.  Un criterio se-
mejante fué adoptado por esta corte en el caso de *Díaz* v. *Ar-
kadia Sugar Co.,* 27 D. P. R. 583, citando al comentarista
Labatt y la jurisprudencia aplicable.

En el citado caso de *Elk Cotton Mills* v. *Grant,* la Corte
Suprema de Georgia, dijo.

''La ley del trabajo de niños fué promulgada con un fin útil.
El objeto de ella fué ser obedecida.  Una violación del estatuto con-
sistente en emplear al demandante, un muchacho de once años de
edad (y no incluído en la clase exceptuada), para trabajar en la
fábrica del demandado, constituía negligencia *per se* en cuanto a él

y autorizaba el que se recobrara por daños personales sufridos por él como resultado próximo de tal empleo. Cuando el estatuto prescribe un deber absoluto para beneficio de una clase de personas, la violación del deber estatutorio que resulta en daño a una de tales personas autoriza que se recobre sin más negligencia, y la expresión 'negligencia *per se'* ha sido bastante generalmente usada para caracterizar tal violación del deber. Ha sido así empleada a menudo en este Estado. En Thompson on Negligence, sección 10, se dice que 'cuando la legislatura del estado, o el concejo de una corporación municipal, teniendo en mente la mejor seguridad del público, o de miembros individuales del público, manda o prohibe la comisión de determinado acto, \* \* \* la concepción general de las cortes, y la única que es reconciliable con la razón, es que el dejar de hacer el acto mandado, o el hacer el acto prohibido, constituye negligencia como mera materia de derecho, llamada de otro modo negligencia *per se,* y esto sin consideración de toda cuestión sobre ejercicio de prudencia, diligencia, cuidado o habilidad, de modo que si es la causa próxima de lesión o daño a otro, y si ese otro no incurrió en falta contributoria, el caso está decidido a su favor y lo único que falta es tasar los daños. Aunque en unos pocos casos se ha resuelto que la violación de un deber estatutorio sólo constituye 'evidencia' de negligencia, y no negligencia *per se,* tales decisiones aunque dictadas por cortes de alta reputación, no sobreviven la prueba de la razón, y esta corte frecuentemente ha resuelto lo contrario. *Atlanta & W. P. R. Co.* v. *Wyly,* 65 Ga. 120; *Louisville & N. R. Co.* vs. *Hames,* 135 Ga. 67 (4), 68 S. E. 805; 1 Hopkins, Personal Injuries, 2da. ed. sees. 18, 125.'' *Elk Cotton Mills* v. *Grant,* 140 Ga. 48 L. R. A. (NS) 661.

Ahora bien, ¿ocurrió el accidente de que se trata con motivo del empleo? ¿Existe en este caso una relación causal entre el empleo ilegal y la lesión motivo de la queja? Ya hemos visto que la corte de distrito resolvió la cuestión en la negativa. Nosotros, por el contrario, basándonos en los propios hechos declarados probados por la corte, examinados a la luz de la jurisprudencia, opinamos que la cuestión debe resolverse en la afirmativa.

Aceptamos que el mero hecho de que el niño sea lesionado durante el tiempo de su empleo no da vida a un derecho de ac-

ción, como decidió la Corte Suprema de Illinois en *Strafford*
v. *Republic Iron Co.*, 238 Ill. 371, 128 A. S. R. 129, 133, pero
aquí, como en el caso de Illinois, no sólo fué lesionado durante
el tiempo de su empleo, sino con motivo de su empleo.

El niño en este caso estaba activamente ocupado en su
empleo cuando recibió las lesiones. Si bien en el instante
mismo en que ocurrió el accidente no daba de comer rabos de
caña a los bueyes o recogía las cañas que caían de los carros
al camino, es lo cierto que realizando esta última ocupación se
le ordenó por el carretero, empleado de los demandados y a
cuyas órdenes trabajaba, que hiciera cierta diligencia para
practicar la cual pasó por el lado de los bueyes de los deman-
dados que se desviaron y le hicieron caer pasándole entonces
por encima el carro de los demandados, fracturándole una
pierna e hiriéndole gravemente otra, siendo bueyes, carro,
cañas y carretero, parte del negocio lucrativo de los deman-
dados, en el cual emplearon al niño en violación de la ley.

El caso sometido a nuestra consideración es más fuerte
que el de Strafford ya citado en el cual la lesión fué recibida
por el niño mientras estaba haciendo una cosa prohibida.
Véase el razonamiento de la corte:

"El apelante, asumiendo que los hechos eran como él los ale-
gaba, o sea, que el apelado había de su propia iniciativa abandonado
el trabajo para hacer el cual estaba empleado y tenía órdenes, y se
había dedicado a otro trabajo que le estaba prohibido hacer cuando
fué lesionado, arguye que no hay mayor razón para decir que su
lesión fué el resultado de su empleo que la que habría si hubiera
sido muerto por un rayo mientras estaba empleado por el apelante.
Es cierto que la responsabilidad no depende sólo del empleo pero
la lesión debe ser una consecuencia de tal empleo. El mero hecho
de que un niño empleado en contravención a la ley recibe una lesión
que en manera alguna es el resultado del empleo, no crearía una
responsabilidad. Pero ese no es el caso aquí. El hecho vital y dis-
tintivo en este caso es que el apelado estaba empleado por el ape-
lante para trabajar en su establecimiento manufacturero, y mientras
estaba dedicado al cumplimiento de servicios para este último en

dicho establecimiento fué lesionado. El se encontraba en la planta del apelante por virtud de su empleo para trabajar allí, y el hecho de que temporalmente abandonara el trabajo para que estaba empleado y que se le había mandado, y se dedicara a una clase de trabajo prohibido, creemos que no destruye la relación causal entre el empleo y la lesión, y si no la destruye, la negligencia contributoria del apelado no constituiría defensa alguna, y la corte no erró al negarse a someter esa cuestión al jurado. No es imponer demasiada carga al apelante el sostener que habiendo ilegalmente empleado·al apelado·para trabajar en su planta, es responsable a él por cualquier lesión recibida por él como resultado del cumplimiento de sus servicios allí, ya estuvieran esos servicios o no en la clase que le estaba encomendada. La ley prohibe, y fué promulgada con el fin de impedir el empleo de niños en cualquier trabajo en establecimientos como el del apelante y es contrario al espíritu de la ley decir que las consecuencias de una voluntaria infracción de la misma pueden ser evitadas demostrando que el niño abandonó el trabajo que se le había dado para hacer y negligentemente se puso a hacer otra cosa, que resultó en la lesión. Si el apelante creyó que había puesto al apelado a hacer trabajo que podía en seguridad llevar a cabo y le había prohibido hacer otro trabajo que se creyó peligroso para él, estaba obligado, a su riesgo, a ver de que el apelado no trataba de dedicarse al trabajo prohibido. El apelante estaba obligado a saber que debido a los tiernos años del apelado éste no era capaz de una apreciación justa del peligro, y estaba obligado también a saber que debido a su falta de madurez era incapaz de una justa comprensión de la necesidad de obedecer las órdenes de los jefes, y, bajo tales circunstancias, si optó por violar la ley empleándolo a él, asumió el riesgo de protegerle contra su propia negligencia mientras estaba dedicado a tal empleo. El hecho de que el estatuto bajo consideración no prescribe en términos expresos una responsabilidad por daños por su violación, como sucede con ciertos estatutos referentes a minas y mineros, no puede surtir diferencia alguna bajo la interpretación dada al estatuto en American Car & F. C. v. Armentraut, 214 Ill. 509, 73 N. E. 766. El estatuto fué promulgado para la protección de la salud y seguridad de los niños, y una responsabilidad por daños resultantes de su violación fué creada ya así se declare expresamente en el estatuto o no.'' *Strafford* v. *Republic Iron Co.,* 238 Ill. 371, 128 Am. St. Rep. 132.

Y es más fuerte también que el caso de *Tarnes* v. *Albion Mfg. Co.*, 147 N. C. 556, 17 L. R. A. (NS.) 602, en el que se resolvió que un niño menor de la edad estatutoria empleado para barrer el salón de hilar y para hacer fajas en una fábrica de algodón tenía derecho a recobrar daños por lesiones sufridas mientras curioseaba con una maquinaria peligrosa en otro piso de la fábrica.

Resta sólo considerar la cuantía de la indemnización. Se reclaman diez mil dólares. El niño contaba a la fecha del accidente once años de edad, era saludable y apto para el trabajo. No sabía leer ni escribir. Sufrió varias heridas que le causaron dolor intensísimo y como consecuencia de una de ellas la fractura de una pierna. Estuvo cuatro meses en el hospital. Reconocido dos años después, a la fecha del juicio, andaba cojo a consecuencia de la fractura y si bien podía trabajar, usando las palabras del perito médico, lo sería "según la clase de trabajo, si es un trabajo suave, que él no tenga que andar, podrá hacerlo, pero si es un trabajo que requiera actividad, ejercicios violentos, siempre tendría el defecto este que le impediría hacer lo que otro hombre pudiera hacer en iguales condiciones." Bajo las anteriores y todas las circunstancias de este caso, cinco mil un dólares de indemnización nos parecen suficientes.

Debe revocarse la sentencia recurrida y en su lugar dictarse otra condenando a los demandados al pago de cinco mil un dólares, empleándose dicha suma en beneficio del menor, bajo la dirección de la Corte de Distrito de Ponce, sin especial condenación de costas.

> *Revocada la sentencia recurrida, sin especial condenación de costas.*

Jueces concurrentes: Sres. Asociados Hutchison y Franco Soto.

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF, CON LA CUAL
ESTÁ CÓNFORME EL JUEZ ASOCIADO SR. ALDREY.

Me parece que la opinión de la corte inferior debe haber dejado resuelto. este caso. Estoy conforme con esa opinión. La discusión en esta corte, sin embargo, giró sobre un campo mucho más ámplio y aunque la urgencia de otros casos no me permitirá tratar la cuestión más extensamente, es conveniente dejar archivada esta opinión disidente.

Si bien sostengo y trataré de demostrar que la teoría de la corte sentenciadora ha sido cambiada en este caso y que la demanda es insuficiente en tanto en cuanto se ha pretendido probar una ocupación peligrosa *per se* de acuerdo con la Ley Orgánica, consideraré primero si la ocupación aquí envuelta, era en efecto peligrosa. Que la ocupación fué peligrosa es, según entiendo, la razón principal que sirve de base a la mayoría de esta corte.

Como aparece de la opinión de ambas cortes, el menor en este caso estaba empleado para atender a los bueyes y alimentarlos cuando descansaban y en recoger las cañas que se cayeran del carro en el camino. La ocupación del demandado era la transportación de cañas en carros de bueyes. La clase de trabajo que estaba obligado a hacer el menor es un incidente y no es distinto de la clase de trabajo que cualquier muchacho tendría que hacer en una plantación si estuviera empleado por un agricultor. Este trabajo es esencialmente una ocupación agrícola. Los jueces disidentes en este caso no tienen ninguna experiencia que les enseñe que las ocupaciones agrícolas son más peligrosas en Puerto Rico que en otros sitios, ni que es más peligroso seguir a un carro de bueyes que conduce cañas por los caminos de Puerto Rico, que lo sería en Louisiana, o en alguna otra comunidad agrícola.

Uno está obligado a admitir que hay cierto peligro para un hombre o muchacho que va detrás de un carro en un camino público, pero no puede ver que tal peligro convertiría en

peligrosa la ocupación de conducir cañas.   No hablo ahora de
las mayores posibilidades de peligro para los muchachos en
la carretera que para los hombres, sino única y exclusiva-
mente considerando la ocupación a que estaba dedicado este
muchacho.   Para sostener la opinión de la mayoría de la corte
en este caso al parecer se hacía necesario decir que las obli-
gaciones de este muchacho constituían una ocupación peli-
grosa.   Para sostener con éxito esta teoría, sería necesario
decir que ir detrás de un carro de bueyes para recoger las
cañas, o dar de comer a los bueyes mientras descansan, es
siempre una ocupación peligrosa.

Desde luego que hay peligros en las calles y caminos pú-
blicos especialmente para los niños, pero sostengo que los pe-
ligros para un niño que estaba empleado como éste, son menos
que los que habría para un mensajero en estos días en cual-
quier ciudad de gran aglomeración de gente.   Los peligros
de cruzar las calles dentro del fuerte tráfico de automóviles
de casi todas las ciudades grandes y populosas me parecen
considerablemente mayores no solamente para un muchacho,
sino también para un hombre.   Decir que la ocupación de este
muchacho era inherentemente peligrosa es cierto únicamente
en el sentido de que cualquier acto de andar por los caminos
o calles puede llegar a ser peligroso.

Una vez admitido que esa ocupación es inherentemente peli-
grosa no estoy en desacuerdo alguno con los casos que con-
vertirían el empleo de un menor en una ocupación peligrosa
en negligencia *per se*.   Gustosamente estoy de acuerdo con
ese principio.   Me inclino fuertemente a convenir con las de-
cisiones de las cortes citadas en la opinión de la mayoría.   La
razón social o económica que sirve de fundamento a estas de-
cisiones es indudablemente, que siempre es peligroso para los
niños estar en una fábrica donde hay maquinaria peligrosa y
que las cortes castigarán tales empleos prohibidos debido a
la enorme y constante oportunidad de peligro para las per-
sonas de tierna edad.   Pero *non constat* que exista tal riesgo

ya en los caminos o en las ocupaciones agrícolas. El riesgo
de muerte o daño en uno u otro caso, es relativamente pe-
queño, especialmente en contraste con una fábrica con maqui-
naria peligrosa tan atractiva para los niños.

Aunque creo que estoy justificado, como ya he dicho, al su-
poner que la opinión de la mayoría descansa en el hecho de
que la ocupación en la cual este menor estaba empleado era
peligrosa inherentemente, y también en asumir que la corte
se fundó en la Ley Orgánica más bien que en la ley No. 42 de
1913, sin embargo, examinaré de paso esa ley. Excepto en su
título, en toda esta ley no se hace mención alguna de las ocu-
paciones peligrosas sino meramente de las ocupaciones lucra-
tivas. Es probable que la idea originalmente fué considerar
las ocupaciones peligrosas, pero en el proceso del proyecto
en la legislatura se hizo que la ley comprendiera más casos
de empleo que aquellos de ocupaciones peligrosas. En sus
partes esenciales la ley es una ley escolar compulsoria en
tanto concierne a menores. La prohibición de empleos se
extiende únicamente a la época de escuela y a las horas de
clase. No existe ninguna prohibición absoluta en el estatuto
contra el empleo de menores en ocupaciones peligrosas, o si-
quiera en ocupaciones lucrativas durante las vacaciones, o
después de las horas de escuela. Tratar, por tanto, de apli-
car la doctrina de negligencia *per se* a todas las ocupaciones
lucrativas es dar una extensión que todavía no ha sido favo-
recida por las cortes de los Estados Unidos. Las cortes no
sostienen que sea negligencia *per se* el ocupar a los niños en
ocupaciones no peligrosas.

Resolver este caso aplicando la Ley Orgánica, es variar la
teoría de la corte sentenciadora. La única ley que fué invo-
cada en la corte inferior, como se verá de la opinión y de
los autos, es la ley No. 42 de 1913. Que la corte de apelación
no variará la teoría de la corte sentenciadora no es doctrina
nueva en esta corte. *Torres* v. *Lothrop et al.* 16 D. P. R. 180,
*Quintero* v. *Morales,* 20 P. R. R. 303; *Porto Rico Benevolent*

*Society* v. *Municipality of Ponce,* 824; *Hernández* v. *Hernández,* decidido en abril 2, 1923. Y véase también el caso de *Torres Zayas* v. *Lothrop Luce & Co.,* 231 U.S. 171.

Los demandados nunca fueron apercibidos de que serían llamados a defender como no peligrosa *per se* la ocupación a que estaba dedicado el menor. La demanda no era sufi-ciente notificación en este sentido, según sostengo.

En cuanto a las demás cuestiones envueltas en los puntos planteados en este caso, me fundo en la opinión de la corte inferior, y estoy autorizado para decir que el Juez Asociado Sr. Aldrey está conforme con esta opinión disidente.