José Camilo Montañez, conocido por José Sosa, y representado por su defensora judicial Obdulia Sosa Vda. de González, demandante y apelado, *v.* Alois A. Fix, demandado y apelante.

Núm. 7755.—*Sometido:* Abril 2, 1940. *Resuelto:* Octubre 28, 1940.

*E. H. F. Dottin,* abogado del apelante; *F. Fernández Cuyar* y *H. González Blanes,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Los hechos que dieron origen a este caso, según aparecen de la Relación del Caso y Opinión emitida por la Corte de Distrito de San Juan, son los siguientes:

"José Camilo Montañez, conocido por José Sosa, el demandante en esta acción, es un menor de edad, hijo legítimo de Evaristo Camilo y de Herminia Montañez, quien nació en Trujillo Alto, el 6 de enero de 1920. Es huérfano de madre, la que falleció el 2 de abril de 1931, y su padre le abandonó desde temprana edad, ignorándose su (*sic*) defensora judicial doña Obdulia Sosa Vda. González, quien es su tía y madre de crianza.

"El accidente que es objeto de investigación en este juicio, ocurrió el 11 de junio de 1935, por lo que el menor demandante tenía entonces 15 años, 5 meses y 5 días de edad.

"*   *   *   *   *   *   *

"Por el resultado de las alegaciones, de la estipulación de las partes en el acto del juicio, y de la evidencia practicada, la corte declara probado, además de lo expuesto en el primer párrafo de esta opinión, que el demandado Alois A. Fix es el patrono en una propiedad o finca rústica, en la que tiene establecido un negocio de vaquería o producción, transportación y venta de leche; que allá el día 9 de mayo de 1935, el demandado empleó al demandante a su servicio en la mencionada propiedad, pagándole un salario de $2.50

por semana y ocupándolo en el pastoreo y vigilancia de ganado vacuno, ocupación que el demandante tenía que desempeñar montado a caballo; que en ese empleo el demandante debía pastorear y pastoreaba alrededor de 40 cabezas de ganado vacuno diariamente, incluso los domingos, teniendo una hora de descanso para almorzar; que allá el día 11 de junio de 1935, como a las 2 de la tarde, estando el demandante montado a caballo llevando a cabo su labor de pastoreo y de vigilancia del ganado, una de las reses se salió del cercado y pasó a la finca contigua; que el demandante, en cumplimiento de su deber, persiguió el animal y cruzó una zanja o quebrada que divide las dos fincas, cuando las patas delanteras del caballo que montaba se enredaron en un alambre y el demandante cayó, sufriendo la fractura del brazo izquierdo; y que el demandante fué recluído en la Clínica Pereira Leal, de Río Piedras, donde permaneció bajo tratamiento médico durante 42 días, al cabo de los cuales fué dado de alta. El demandado pagó los gastos de hospitalización.''

La estipulación de las partes fué sustancialmente al efecto de que el demandado se dedicaba al negocio de producción, transporte y venta de leche; que el demandado empleaba al demandante en el pastoreo de ganado, trabajo que el demandante tenía que efectuar montado a caballo; que mientras realizaba este trabajo el demandante sufrió un accidente que le ocasionó la fractura del brazo izquierdo. El demandante igualmente puso al demandado en la silla testifical y éste declaró en torno a los hechos relacionados con su propia ocupación y en cuanto al empleo del menor y más o menos en tanto en cuanto él sabía sobre la forma en que ocurrió el accidente.

En la prueba surgió la discusión de si el caballo era o no manso, mas la corte inferior no decidió la cuestión y resolvió que la prueba era contradictoria. Podemos aceptar como un hecho no probado que el caballo era un animal peligroso o que la necesidad de montarlo hacía que la ocupación fuera peligrosa. Por regla general el menor iba acompañado por otros dos peones que le ayudaban a cuidar el ganado. El demandado no tenía motivos para esperar que ocurriera este accidente.

Aun si el demandante hubiera probado que el caballo era un animal peligroso, el hecho sería impertinente, toda vez que el accidente fué causado no por los resabios del animal sino porque el caballo en que iba montado el menor tropezó con un trozo de alambre de púas, resbaló y el menor cayó al suelo. Si este niño hubiera sido mayor de 16 años de edad, no resolveríamos que hubo negligencia por parte del demandado al enviar tal niño a cuidar del ganado.

Bajo todas las circunstancias del caso el riesgo asumido por este menor no fué distinto al de cualquier otro peón, suponiendo que él tuviera la edad necesaria. La corte, sin embargo, basó su sentencia contra el demandado en el fundamento de que éste no tenía derecho a emplear al menor demandante en un empleo lucrativo.

██ Aceptando como ciertos los hechos que estimó probados la corte inferior a virtud de la prueba y de la estipulación de las partes, entonces, si el demandante hubiese sido mayor de 16 años en la fecha del accidente, la inexistencia de su causa de acción hubiera sido manifiesta, pues la evidencia no demuestra en forma alguna que la causa próxima del accidente fuese la negligencia del demandado. Mas como para dicha fecha el demandante no había cumplido aun la edad de 16 años, surge la cuestión de si el emplearlo en tales condiciones era o no legal, habida cuenta de que no tenía un permiso del Departamento del Trabajo para ser empleado.

La corte inferior estimó que el demandado había infringido la Ley núm. 75, ''Para reglamentar el empleo de menores y disponer la asistencia obligatoria de los niños de Puerto Rico a las escuelas, y para otros fines,'' aprobada el 20 de julio de 1921 (Leyes de ese año, pág. 679), enmendada en sus artículos 1, 3, 5, 6 y 13 por la núm. 64 de 31 de julio de 1925 (Leyes de ese año, pág. 339), y considerando que el demandado había infringido la ley al emplear al demandante, lo hizo responsable de los daños sufridos por éste.

La citada Ley núm. 75 declara compulsoria la asistencia a las escuelas, de niños entre las edades de 8 y 14 años (art. 21), siendo su propósito que todo niño comprendido en dicha edad reciba instrucción, a menos que se obtenga una excusa del Comisionado de Educación cuando después del examen que especifique dicho funcionario el niño "resulte mental o físicamente incapacitado para asistir." (Art. 24.)

Sin embargo, el artículo 2 dispone lo siguiente:

"Ningún niño menor de catorce años de edad será empleado, ni se le permitirá ni tolerará que trabaje en Puerto Rico, en ninguna ocupación lucrativa, ni en relación con ella, excepción hecha de lo que dispone el Artículo 14 de esta Ley, excepción hecha también del trabajo doméstico, y en granjas y jardines."

A primera vista parece indicar dicho artículo que niños menores de 14 años pueden ser empleados durante el curso escolar en el trabajo doméstico y en granjas y jardines, lo cual estaría en conflicto con los artículos 21 y 24 antes citados y en pugna también con el manifiesto propósito de la ley de exterminar el analfabetismo, obligando a todo niño de edad escolar, excepto los mental o físicamente incapacitados, a asistir regularmente a las escuelas.

La excepción relativa al trabajo doméstico y al de granjas y jardines, es una excepción a la excepción que hace dicho artículo de aquellos niños menores de catorce años que obtienen permisos especiales para trabajar durante las vacaciones, prescribiendo el citado artículo 2 que un niño de edad escolar no necesita dicho permiso cuando la labor a que se dedique en las vacaciones consista de trabajos domésticos o en granjas o en jardines.

Cumplidos los catorce años, la asistencia a la escuela no es compulsoria, pero velando el legislador por la salud y buen desarrollo físico de los menores de 16 años, prohibe su empleo en ocupaciones lucrativas sin el permiso a que se refieren los artículos 8 y siguientes, el cual les expide el Departamento del Trabajo luego de un examen físico y

de cumplirse ciertos requisitos legales. Exceptúanse de la necesidad de tal permiso los que hayan cumplido 14 años y no hayan llegado a 16, que hayan de dedicarse a trabajo doméstico o en granjas (*"farms"* en la edición inglesa) o jardines. Véanse entre otros, los artículos 3 y 8 de la ley.

En el caso de autos, como hemos visto, el demandante en la fecha del accidente estaba próximo a cumplir 16 años, o lo que es lo mismo, había salido de la edad escolar, y se empleaba en pastorear vacas en la finca del demandado, la cual era dedicada a la producción y venta de leche. En tales circunstancias, ¿infringía la ley el demandado al emplear al demandante sin tener éste un permiso del Departamento del Trabajo? Indudablemente que no. La finca del demandado, llámese estancia, granja o plantación, está comprendida en el vocablo *"farm"* que usa la edición inglesa y en el de "granja" de la edición española, y por consiguiente no necesitaba el demandante permiso alguno para trabajar en ella, teniendo como tenía más de catorce años de edad.

La corte inferior cita en su opinión los casos de *Rivera y Ribas,* 31 D.P.R. 361, y *Cruz* v. *Central Pasto Viejo, Inc.,* 44 D.P.R. 367. Pero ni uno ni otro son aplicables a la cuestión en controversia, pues en ellos se trataba de niños de 13 y 9 años de edad respectivamente y el accidente ocurrió durante el curso escolar, por lo que su empleo era completamente ilegal, siendo por consiguiente responsable el patrono de los daños sufridos por dichos menores.

Insiste además el demandado en que el remedio adecuado del demandante era acudir a la Comisión Industrial, y a nuestro juicio ése era el procedimiento que correspondía. Para la época en que la corte de distrito resolvió el caso la regla existente era que un menor empleado ilegalmente no podía obtener compensación y así lo resolvimos en el caso de *Montaner* v. *Comisión Industrial,* 53 D.P.R. 518, teoría que fué más tarde revocada en reconsideración. *Montaner* v. *Comisión Industrial,* 54 D.P.R. 67.

560

El demandado era un patrono asegurado y el demandante pudo haber recobrado la suma que le correspondiera bajo los términos de la póliza.

Todo esto, sin embargo, es cuestión que no puede perjudicar en forma alguna los derechos del demandado, y resulta, por ende, puramente académica en este caso.

Siendo perfectamente legal el empleo del demandante por el demandado y no apareciendo que el accidente ocurriera por la culpa o negligencia de éste, *procede declarar con lugar el recurso, revocar la sentencia apelada y en su lugar dictar la que debió haber dictado la corte de distrito, a saber, desestimar la demanda con imposición de costas al demandante, sin incluir honorarios de abogado.*